### In the Matter of BOSTON AND MAINE CORPORATION, Debtor.

### No. 70–250–M.

United States District Court, D. Massachusetts.

Nov. 6, 1984.

Ralph J. Moore, Jr., Shea & Gardner, Washington, D.C., for petitioner.

## MEMORANDUM AND ORDER

*On Second Petition of Ralph J. Moore, Jr., Esquire, for Final Allowance of Compensation and Disbursements Incurred as Special Counsel*

in re

A. *Implementation of Award No. 387*

   B. *The Beverly Collision*

C. *Acquisition of Conrail Lines*

   D. *The MBTA Contract*

FRANK J. MURRAY, Senior District Judge.

In his Second Petition,* Ralph J. Moore, Jr., Esquire (the "Petitioner"), seeks allowance of final compensation for services rendered and expenses incurred as special counsel to Debtor's trustees, in the above matters.

The Interstate Commerce Commission fixed the maximum limits within which allowance of compensation to Petitioner may be made out of Debtor's estate, pursuant to 11 U.S.C. § 205(c)(2), for all matters included in the Second Petition. Creditors and

other interested parties were afforded opportunity to be heard by the court at the hearing held on the Second Petition. The Debtor's trustees were heard. No opposition was offered to the Second Petition at the hearing; nevertheless, the court is not relieved of its responsibility to scrutinize closely the details of the petition.

Petitioner was hired by Debtor's trustees as special counsel with respect to the matters listed A through D above.

A. *Implementation of Award No. 387.* No litigation or hearings before courts or other tribunals were involved in this matter. Petitioner seeks $29,161.25 for 258.5 hours of services rendered in connection with disputes between Debtor and United Transportation Union (the "UTU") arising out of the implementation of the Award rendered by Arbitration Board No. 387. Most of the work of Petitioner occurred in 1981. As described by Petitioner, the disputes centered on, among other things, the establishment of the Award-mandated "productivity fund", the definition of protected employees and the procedures for implementation of their rights under the Award, the duration and application of the Award's "moratorium" provision, and categories of employees eligible for payment of 1978 retroactive wages by cash instead of by paid leave. The services were rendered by Petitioner and one of his partners (both spent 107 hours *in toto*), and an associate who spent 151.5 hours.

B. *The Beverly Collision.* Petitioner requests allowance of compensation in the amount of $3,565.00 for 31 hours of services rendered advising Debtor as to a fact-finding hearing concerning a collision between a passenger train and a freight train on Debtor's lines. Petitioner's partner and an associate provided the services. UTU brought suit to enjoin the hearing on the ground that two of Debtor's trainmen on duty at the time of the collision were unable to attend the hearing. Petitioner's colleagues did not participate in the hear-

---

* Other matters covered by the Second Petition involve the *Lenfest* and *Carbone* cases which have already been dealt with by the court, and the Department of Public Utilities matter which will be dealt with later.

ing. They gave advice to Debtor's attorney on several issues, including the conduct of the litigation, and the course to be pursued by Debtor to bring the hearing to a conclusion consistent with the due process rights of the participants. Debtor's attorney agreed to an extension of the temporary injunctive relief; the fact-finding hearing was completed; the issues raised by the UTU suit became moot.

C. *Acquisition of Conrail Lines.* Petitioner seeks allowance of compensation in the amount of $5,740.00 for 46.75 hours of services rendered in connection with Debtor's proposed acquisition of certain Conrail lines situated in Rhode Island, Connecticut and western Massachusetts. Debtor's trustees requested Petitioner to advise them concerning the applicability of the labor provisions of the Northeast Rail Service Act of 1981 (the "NRSA") to employees who might be transferred to Debtor's employment if such acquisition were realized. Petitioner was also requested to render advice whether Debtor under NRSA would be entitled to apply the "manning provisions of Arbitration Award No. 387", or "might apply manning arrangements under the collective bargaining contracts of the Springfield Terminal Company, a B & M subsidiary". Petitioner assisted in drafting the labor provisions of Debtor's proposal for acquisition of the Conrail lines. Petitioner, one of his partners and an associate provided the services to Debtor's trustees.

D. *The MBTA Contract.* Petitioner seeks compensation in the amount of $1,175.00 for 12.5 hours of services rendered to Debtor's trustees in connection with questions arising out of the Debtor's contract with Massachusetts Bay Transportation Authority (the "MBTA"). Petitioner's associate gave an opinion letter to the Debtor regarding the applicability of the property transfer provisions and the employee protection provisions of NRSA in the event the MBTA decided to contract with the Amtrak Commuter Services Corporation to operate MBTA's Boston commuter service instead of MBTA maintaining its contractual relationship with Debtor. Of the 12.5 hours expended, Petitioner spent one hour and his associate spent 11.5 hours.

The hours expended in the above matters, A through D, are itemized in statements furnished by Petitioner. The itemization sets forth notations of conferences, conversations and discussions had with persons associated with Debtor, but the record does not always set out the statement of the problem. Moreover, the specific advice given is not described. The subject matter of the requests for advice is referred to in Petitioner's memorandum. It is noted that on occasions the advice was given orally, on other occasions it was given in writing, but no written material was submitted with the petition or with Petitioner's memorandum.

The court has no first-hand knowledge of these matters, for none of the matters for which compensation is sought was brought before the reorganization court. Thus, the petition and Petitioner's memorandum do not provide the court with a sufficient base from which to determine the effort required by Petitioner to provide Debtor with the advice requested, or the novelty and difficulty of the questions presented by Debtor, or the skill required to perform the legal service properly, or the result obtained by Debtor from the services rendered by Petitioner. However, as noted above, the trustees appeared at the hearing and addressed the court with respect to the matters set forth in the Second Petition, and expressed support of the Petitioner's requests. Where the nature of Petitioner's services set out in A through D above did not involve litigation or appearance before a court or other tribunal, but solely related to the trustees' requests for advice from Petitioner, the court is satisfied to rely on the trustees' verification of the legal services. Apart from the request for compensation of legal services is Petitioner's request for allowance of compensation for 32.75 hours of paralegal services. The record reflects nothing of the number of paralegals assigned, the services performed by them or the hourly rates charged, and, therefore, no allowance for the paralegal item can be made. Petitioner has not set

forth in sufficient detail the expenses incurred in rendering the legal services to enable the court at this time to make an allowance of a sum to reimburse Petitioner, but the court will permit Petitioner to furnish the court with the required detail at a subsequent time.

Accordingly, an order shall enter allowing Petitioner compensation for the matters set out above, A through D.